| | |
|---|---|
| UNITED STATES OF AMERICA, STATE OF TENNESSEE *ex rel.* JASON ARMES, | Case No. 3:14-cv-172 |
| *Plaintiffs*, | Judge Travis R. McDonough |
| v. | Magistrate Judge C. Clifford Shirley |
| JAN GARMAN, *et al.*, | |
| *Defendants*. | |

**MEMORANDUM OPINION**

Before the Court is Defendants' motion to dismiss Relator's complaint (Doc. 28), Defendants' motion to take judicial notice (Doc. 30), and Relator's motion to amend his complaint (Doc. 63). For the following reasons, the Court will **DENY** Relator's motion to amend (Doc. 63) and **GRANT** Defendants' motions to dismiss and for judicial notice[1] (Docs. 28, 30).

I.     **BACKGROUND**

Defendants Select Specialty Knoxville and Select Specialty – North are Long Term Acute Care facilities ("LTAC"). To be classified as an LTAC, a facility must have an average inpatient length of stay of greater than 25 days. 42 C.F.R. § 412.23(e)(2). LTACs are

---

[1] Relator did not contest Defendants' motion to take judicial notice. Defendants request that the Court take judicial notice of several documents including a complaint in a case filed in district court in Indiana. (Doc. 30.) The Court can take judicial notice of publicly filed court records. *Lynch v. Leis*, 382 F.3d 642, 648 n.5 (6th Cir. 2004). The Court thus **GRANTS** Defendants' motion to take judicial notice. (Doc. 30.)

reimbursed under a prospective payment system ("PPS") in which the LTAC receives reimbursement on a per-patient basis depending on the patient's diagnosis related group ("DRG"). (Doc. 1, at 60.) However, if a patient's length of stay is below 5/6 of the geometric average length of stay for that DRG, the LTAC is reimbursed at a lower rate. 42 C.F.R. § 412.529. This is known as a "short-stay outlier." *Id.* There are also other facts that can push a patient into a higher reimbursement DRG. For example, if a patient is on a ventilator for at least 96 hours, the patient is reimbursed at a substantially higher rate. (Doc. 1, at 10.)

Both Medicare and TennCare generally limit payment of claims to those for medically necessary services. (Doc. 1, at 8.) To seek payment for services, Medicare requires that

> with respect to inpatient hospital services (other than inpatient psychiatric hospital services) which are furnished over a period of time, a physician certifies that such services are required to be given on an inpatient basis for such individual's medical treatment, or that inpatient diagnostic study is medically required and such services are necessary for such purpose . . . .

42 U.S.C. § 1395f(a)(3).

Defendants are required to submit cost reports, which are used to determine Medicare reimbursement. (Doc. 1, at 10.) Each cost report contains a certification provision that requires the provider to certify the facility is in compliance with all federal healthcare laws and regulations. (*Id.* at 10–11.) Facilities are prohibited from submitting claims for payment based on patient referrals from physicians who have a financial relationship with the hospital. 42 U.S.C. § 1395nn(a)(1)(B).[2] Finally, federal law prohibits receiving or giving kickbacks for referrals from a federally funded health care program. 42 U.S.C.A. § 1320a-7b(b). Tenn-Care has functionally similar provisions. (Doc. 1, at 14–15.)

---

[2] The statute lists some kinds of financial relationships that are exempted, 42 U.S.C. § 1395nn(b), but prohibits all other financial relationships, 42 U.S.C. § 1395nn(a).

Relator worked as a respiratory therapist at Select Specialty Hospital in Knoxville from 2005 until his termination in 2012. (Doc. 1, at 4.) Select Specialty – Knoxville ("Select Specialty") and Select Specialty – North ("Select Specialty – North") are LTACs that are part of a larger network of hospitals owned by Select Medical Corporation ("Select Medical"). (*Id.*) Relator alleges Defendants engaged in a series of fraudulent schemes designed to pursue profit rather than patient care.

In the first scheme, Relator alleges Defendants manipulated patient admissions and discharges to ensure Select Specialty and Select Specialty North retained their LTAC status. Relator further alleges that patients' lengths of stay were manipulated to ensure that patients were not discharged before the 25th day—the minimum average inpatient length of stay required for a facility to retain its LTAC status. (*Id.* at 21–22 (citing 42 C.F.R. 412.23).)

Defendants also manipulated patient admissions and discharges to ensure maximum reimbursement. Relator alleges Defendants had a high incentive to manipulate patients' length of stay so that they were discharged after their "5/6 day" to ensure that Defendants would not be reimbursed at the lower short-stay outlier rate.[3] (*Id.* at 18–21.) Relator also alleges that once the patient hit the 5/6 day, Defendants pressured staff to discharge them as soon as possible.

Relator also alleges Defendants admitted patients who did not require the kind of care provided at the LTACs. (Doc. 1, at 24–25.) Relator alleges an LTAC may only admit patients that the LTAC believes can be weaned off of the ventilator and that—in contravention of this requirement—Defendants admitted patients knowing they would never be weaned off the ventilator. (*Id.*)

---

[3] LTACs are reimbursed on a per-patient basis. If a patient's stay is below the average length of stay for that DRG, the LTAC is reimbursed at a lower rate—this is known as the "short-stay outlier." 42 C.F.R. § 412.529.

Relator also alleges Defendants placed patients on ventilators for longer than was medically necessary because it was financially advantageous to have patients on ventilators at least 96 hours. (Doc. 1, at 10.) Relator and other staff were pressured to keep patients on ventilators beyond when it was medically necessary. (Doc. 1, at 18–19.) Finally, Relator alleges Defendants improperly paid bonuses to clinical liaisons for each patient whom they referred to Defendants who stayed on the ventilator for at least 96 hours. (Doc. 1, at 26.)

To support these schemes, Relator references four representative patients in his Complaint:

- "An elderly patient, Patient A, was admitted to Select Specialty- Knoxville in [month, year]. Once she and her doctors determined her life was soon coming to its close, she and her family decided it would be best for her to spend her last days in her home with her family and her dog. Upon making the decision, she and her family spoke with Jan Garmon, a case manager at Select Specialty- Knoxville, and Ms. Garmon of Select Specialty- Knoxville refused to discharge her because she had not met the average length of stay. Shortly thereafter, Patient A died in her hospital room." (Doc. 1, at 20.)

- "Patient B, a ventilator patient at Select Specialty - Knoxville with renal failure was there between three and four months in approximately 2010. Because case managers and other management were driven by profits rather than patient care and well-being, they told the LTAC's staff to find a way to justify Patient B's discharge even though Patient B's discharge was not in the interest of his/her well-being." (Doc. 1, at 21.)

- "Dr. Joseph performed a bronchoscopy on Patient C and then put the patient back on a ventilator after Patient C's 5/6 day at Select Specialty - Knoxville. Management scolded Dr. Joseph for performing the medically necessary procedures because they needed the patient discharged to maximize the LTAC's Medicare reimbursement." (Doc. 1, at 21.)

- "Patient D[] was admitted between 2011 and the middle of 2012 with severe head trauma and a very poor EEG reading who was accepted on a ventilator even though Patient D should have been admitted to a post-acute care facility

rather than an acute care facility. The patient stayed at Select Specialty-North until his discharge approximately 60 days later." (Doc. 1, at 24–25.)

Relator filed his Complaint April 29, 2014. (Doc. 1.) Based on the above schemes, he asserts five claims against Defendants: (a) 31 U.S.C. § 3729(a)(1)(A) ("Count I - Presentment of False Claims"); (b) 31 U.S.C. § 3729(a)(1)(B) ("Count II - False Records"); (c) 31 U.S.C. § 3729(a)(1)(C) ("Count III - Conspiracy"); (d) 31 U.S.C. § 3729(a)(1)(G) ("Count IV - Reverse False Claim"); and (e) Tenn. Code. Ann. § 71-5- 181, et. seq. ("Count V - Tenn. Presentment").

Prior to the filing of this complaint, several relators filed a complaint against a Select Medical facility in Indiana (the "Indiana Complaint"). *See United States ex rel. Conroy v. Select Medical Corporation, et al.*, No. 3:12-cv-51 RLY-WGH (S.D. Indiana). The Indiana Complaint was unsealed on January 9, 2013. (Doc. 29, at 11.) Defendants have moved to dismiss, arguing this Relator's Complaint is barred by the allegations in the Indiana Complaint due to the FCA's first-to-file bar and that Relator fails to plead his fraud claims with particularity. On April 11, 2016, Relator filed a motion to amend his Complaint (Doc. 63), which Defendants opposed (Doc. 66).

## II. STANDARD OF REVIEW

According to Rule 8 of the Federal Rules of Civil Procedure, a plaintiff's complaint must contain "a short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1). Though the statement need not contain detailed factual allegations, it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

A defendant may obtain dismissal of a claim that fails to satisfy Rule 8 by filing a motion pursuant to Rule 12(b)(6). On a Rule 12(b)(6) motion, the Court considers not whether the

plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct." *Id.* at 679. For purposes of this determination, the Court construes the complaint in the light most favorable to the plaintiff and assumes the veracity of all well-pleaded factual allegations in the complaint. *Thurman v. Pfizer*, *Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). This assumption of veracity, however, does not extend to bare assertions of legal conclusions, *Iqbal*, 556 U.S. at 679, nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

After sorting the factual allegations from the legal conclusions, the Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman*, 484 F.3d at 859. This factual matter must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

"A motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) involves either a facial attack or a factual attack." *Glob. Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015). A facial attack "is a challenge to the sufficiency of the pleading," and, on such a motion, "the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." *U.S. v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). "A factual attack, on the other hand, is not a challenge the sufficiency of the pleading's allegations, but a challenge to the

6

factual existence of subject matter jurisdiction." *Id*. "On such a motion, no presumptive truthfulness applies to the factual allegations, . . . and the court is free to weigh evidence and satisfy itself as to the existence of its power to hear the case." *Id*. (internal citations omitted).

### III. ANALYSIS

Defendants have moved to dismiss, arguing that Relator's Complaint is barred by the allegations in the Indiana Complaint pursuant to the FCA's first-to-file bar and that Relator fails to plead his fraud claims with particularity. (Doc. 28.) Defendants argue that Relator's motion to amend should be denied because it is inexcusably delayed and futile. (Doc. 66.)

#### A. Federal Claims

##### a. First-to-File Bar

The False Claims Act provides that "[w]hen a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730 (b)(5). This provision "establishes a first-to-file bar, preventing successive plaintiffs from bringing related actions based on the same underlying facts." *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 971 (6th Cir. 2005) (quoting *U.S. ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1187 (9th Cir. 2001)). To determine whether a relator's complaint runs afoul of the first-to-file bar, the Court compares the relator's complaint to the allegedly first-filed complaint.[4] *Id*.

---

[4] There is some dispute between the parties regarding whether the first-to-file bar is jurisdictional. Defendants point to a 2009 case in which the Sixth Circuit characterized the first-to-file bar as the "jurisdictional limit on the courts' power to hear certain duplicative qui tam suits." *U.S. ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 516 (6th Cir. 2009) (quoting *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 (10th Cir. 2004)). Relator argues that the first-to-file bar is not jurisdictional but relies on out-of-circuit case law—chiefly *U.S. ex rel. Heath v. AT & T, Inc.*, 791 F.3d 112 (D.C. Cir. 2015). In *Heath* the D.C. Circuit analyzed several recent Supreme Court cases and concluded that the first-to-file bar is non-jurisdictional. *See id*. at 119–20. Essentially, the Court in *Heath* applies what amounts to a sort of clear

The later complaint need not allege "precisely the same facts as a previous claim to run afoul of this statutory bar." *U.S. ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.*, 149 F.3d 227, 232 (3d Cir. 1998). "Rather, so long as a subsequent complaint raises the same or a related claim based in significant measure on the core fact or general conduct relied upon in the first qui tam action, the § 3730(b)(5)'s first-to-file bar applies." *U.S. ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 516 (6th Cir. 2009) (quoting *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1279 (10th Cir. 2004)). "[T]he fact that the later action names different or additional defendants is not dispositive as long as the two complaints identify the same general fraudulent scheme." *Id.* at 517.

Similarly, the fact that the complaint alleges a somewhat different time frame is not dispositive. *Id*. "'[O]nce the government knows the essential facts of a fraudulent scheme, it has enough information to discover related frauds,' and the rationale behind allowing private plaintiffs to bring *qui tam* suits is fulfilled." *Poteet*, 552 F.3d at 517 (quoting *LaCorte,* 149 F.3d at 234).[5]

---

statement rule to jurisdiction-stripping statutes. Because Congress did not speak in jurisdiction-stripping language in the first-to-file bar, the D.C. Circuit held that the issue is more properly considered to bear on whether a relator has stated a claim. *Id*. at 120–21. Notwithstanding the analysis in *Heath*, the Sixth Circuit has held that the first-to-file bar is jurisdictional, and this Court is bound by that holding. *Poteet*, 552 F.3d at 516. Indeed, other district courts within the Sixth Circuit—despite acknowledging *Heath* and the intervening precedent on which it relies— have continued to adhere to the holding in *Poteet*. *See, e.g.*, *U.S. ex rel. Doghramji v. Cmty. Health Sys., Inc.*, No. 3:11-00442, 2015 WL 4662996, at *7 (M.D. Tenn. Aug. 6, 2015) (noting the shift in the Supreme Court's jurisprudence referenced in *Heath*, but acknowledging that *Poteet* remains controlling authority in the Sixth Circuit); *U.S. ex rel. Moore v. Pennrose Props., LLC*, No. 3:11-CV-121, 2015 WL 1358034, at *10 (S.D. Ohio Mar. 24, 2015) (noting that "[t]he first-to-file bar is a jurisdictional limitation").

[5] Relator argues that *Kellogg Brown & Root Servs., Inc. v. U.S., ex rel. Carter*, 135 S. Ct. 1970 (2015) worked a "tectonic shift" in FCA jurisprudence such that much of the above case law is no longer applicable. (Doc. 55-1, at 1 (citing *United States ex rel. Gadbois v. PharMerica Corp.*, 809 F.3d 1 (1st Cir. 2015).) In *Carter*, the Supreme Court construed the word "pending" in the first-to-file provision as limited to only those actions that were still pending. Relator reasons that

Defendants argue Relator's claims are barred by a previously filed complaint in Indiana ("the Indiana Complaint").[6] Like Relator's Complaint, the Indiana Complaint alleges that Select Medical-owned LTAC facilities manipulated patients' length of stay to maximize Medicare reimbursement by admitting patients that did not require LTAC care. (*Compare* Doc. 1, at 24–25 *with* Doc. 30-3, at 9.) Both complaints also allege that patients' lengths of stay were manipulated to insure they reached the 25-day requirement needed to preserve the LTAC status. (*Compare* Doc. 1, at 18–23 *with* Doc. 30-3, at 8.) Like Relator's Complaint, the Indiana Complaint alleges that Select Medical personnel extended patients' stay to insure they reached their 5/6 day and discharged them soon after to maximize reimbursement. (*Compare* Doc. 1, at 18–23 *with* Doc. 30-3, at 8, 17.) Finally, like Relator's Complaint, the Indiana Complaint alleges that Select Medical personnel performed unnecessary procedures to drive up reimbursement rates. (*Compare* Doc. 1, at 25–27 (alleging that Defendants unnecessarily kept patients on ventilators) *with* Doc. 30-3, at 8, 39 (alleging that Select intentionally weans patients to maximize payment under DRG 207 (the 96+hour requirement).) The Indiana Complaint alleges that all of this was done at the direction of Select Medical corporate leadership as part of a

---

*Carter* compels the Court to apply a similarly narrow construction to the word "facts." Relator argues that, because his complaint alleges different facts, the first-to-file bar does not apply. Relator's argument takes *Carter* too far. There is no indication that Congress intended to use the word "facts" in such a limited manner, nor is there any indication that the Supreme Court intended to upend FCA case law with its decision in *Carter*. Furthermore, to read *Carter* in the way suggested by Relator would eviscerate the first-to-file bar. A prospective relator could almost always find some peculiar facts that are not alleged in the original complaint. Accordingly, the Court rejects this argument.

[6] For the reasons stated in Note 1 *supra*, the Court will take judicial notice of the Indiana Complaint. The Court can consider this document without converting Defendants' motion into one for summary judgment. *See Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008) ("A court may consider public records without converting a Rule 12(b)(6) motion into a Rule 56 motion.").

nationwide scheme. (*See* Doc. 30-3, at 6 ("Misconduct at Select Specialty Hospital is not caused by the rogue action of unethical physicians alone. . . . As a matter of corporate policy, Select Medical trains its case managers and all employees to manage patients by a sole and unrelenting focus on maximizing payment under the DRG and setting Length of Stay as needed to obtain maximum reimbursement from Medicare without regard for patient health and safety."); *see also id.* at 6–11.) Underscoring the similarity between the two complaints, some of the language Relator uses in the Complaint here appears lifted directly from the Indiana Complaint. (*See* Doc. 29-9 (setting out a side-by-side chart comparison of representative passages from the two complaints revealing only minor cosmetic changes).)

Notwithstanding the copying of language from the Indiana Complaint, Relator argues there are meaningful differences between the Indiana Complaint and the Complaint here. First, unlike Relator's Complaint, the Indiana Complaint centers around a physician group that was able to obtain a part ownership interest in the facility and then became the primary driving force in the fraudulent scheme. Second, Relator's Complaint focuses much more significantly on the ventilator aspects of the scheme while the Indiana Complaint contains only isolated and vague references to the ventilator issues.

Relator argues that this case is similar to *U.S. ex rel. Heath v. AT & T, Inc.*, 791 F.3d 112 (D.C. Cir. 2015). In *Heath*, the prior complaint alleged a scheme by Wisconsin Bell (a wholly-owned subsidiary of AT&T) to defraud a federal program that provided discounted rates to schools and libraries. *Id*. at 121. The scheme involved affirmative representations to schools and libraries that lower-priced programs did not exist. *Id*. The later complaint, by contrast, alleged a nationwide scheme to defraud that was accomplished not by affirmative misrepresentations, but by refusing to train or tell their employees about the applicable lowest-

price mandate. *Id*. The D.C. Circuit reversed the district court's dismissal, noting that the first complaint did nothing to alert the United States Government to a nationwide scheme to defraud. *Id*.

Relator argues that—like the prior complaint in *Heath*—the Indiana Complaint rested primarily on the actions of a rogue physicians group and did nothing to alert the government of more widespread fraudulent practices at Select Medical facilities. Relator argues that the only allegations against the national corporation are conclusory and devoid of factual specifics and that Defendants have already moved to dismiss those allegations on this basis. (Doc. 69, at 24–25.)

Relator's argument is unavailing. Based on binding Sixth Circuit case law, the relevant inquiry is whether the prior suit put the government on notice of the fraudulent scheme alleged here. *See U.S. ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 517 (6th Cir. 2009) ("'[O]nce the government knows the essential facts of a fraudulent scheme, it has enough information to discover related frauds,' and the rationale behind allowing private plaintiffs to bring *qui tam* suits is fulfilled." (quoting *LaCorte,* 149 F.3d at 234)). Like the Complaint here, the Indiana Complaint alleged "the knowing manipulation of Length of Stay for patients at Select Long Term Acute Care Hospitals to maximize reimbursement under the Medicare Prospective Payment System for Select and for referring physicians, unnecessary medical procedures and upcoding." (Doc. 30-3, at 6.) The Indiana Complaint also alleged that "Select Medical trains each of its case managers to manage patients' Length of Stay based on financial criteria above all else. [The] Chief Operating Officer, instructs case managers to avoid Short Stay Outliers by not allowing patients to be discharged to rehabilitation even where that would be better for the patient" (Doc. 30-3, at 9). The Indiana Complaint also discusses the 25-day rule (Doc. 30-3, at

9) and the 5/6 day rule (Doc. 30-3, at 18). The Indiana Complaint also discusses targeting ventilator patients for up-coding. (Doc. 30-3, at 8–9.) Finally, the Indiana Complaint also clearly alleges that the fraudulent scheme is coming from the corporate headquarters across the network, not a scheme limited only to Indiana. (*See generally* Doc. 30-3, at 6–11.) While the complained of action here took place in different states, this is not dispositive. *See Poteet*, 552 F.3d at 508–09, 516–17 (holding that a complaint filed against a subsidiary of Medtronic based on conduct that took place in California precluded a later filed case against Medtronic in the Western District of Tennessee). The only element arguably not contained within the Indiana Complaint is the liaison kickback scheme, but, as discussed below, Relator fails to plead this claim with the requisite particularity.

Accordingly, the Court will dismiss Relator's claims based on the allegations above—with the exception of the liaison kickback scheme—as barred by the first-to-file bar.

### b. Rule 9(b) Particularity

Defendants also argue that Relator has failed to plead his fraud claims with particularity. FCA claims are subject to Rule 9(b)'s pleading requirements. *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006). Because the Court has already ruled that Relator's claims based on all other schemes are barred by the first-to-file bar, the Court will address the particularity requirement only with respect to the alleged liaison kickback scheme.

"To plead fraud with particularity, the plaintiff must allege (1) 'the time, place, and content of the alleged misrepresentation,' (2) 'the fraudulent scheme,' (3) the defendant's fraudulent intent, and (4) the resulting injury." *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 467 (6th Cir. 2011). "So long as a relator pleads sufficient detail—in terms of time, place and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud—to allow

the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met." *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008).

"[P]leading an actual false claim with particularity is an indispensable element of a complaint that alleges a FCA violation in compliance with Rule 9(b)." *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 504 (6th Cir. 2007). "[W]here a relator pleads a complex and far-reaching fraudulent scheme with particularity, and provides examples of specific false claims submitted to the government pursuant to that scheme, a relator may proceed to discovery on the entire fraudulent scheme." *Id*. at 510. A relator may support more generalized allegations of a fraudulent scheme with examples, provided that the examples are truly representative of the broader allegations in all material respects. *Id*. But "Rule 9(b) does not permit a False Claims Act plaintiff merely to describe a private scheme in detail but then to allege simply . . . that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted." *U.S. ex rel. Eberhard v. Physicians Choice Lab. Servs., LLC*, No. 15-5691, 2016 WL 731843, at *4 (6th Cir. Feb. 23, 2016) (quoting *Sanderson*, 447 F.3d at 877).

Here, the only scheme that even arguably survives the first-to-file bar[7] is the liaison kickback scheme—a scheme that is notably unsupported by any particular allegations of fraudulent payments. Relator alleges that Clinical Liaisons received a bonus for each ventilator patient they referred who stayed on the ventilator for at least 96 hours. (Doc. 1, at 26.) However, none of the incidents he describes gives rise to a particular false claim. For example, Relator alleges that Defendant Bass "pressured a respiratory therapist specifically why he was

---

[7] Relator includes the kickback liaison scheme as one of several methods Defendants used to ensure patients were kept on ventilators in excess of 96 hours. While this specific method is absent from the Indiana Complaint, the Indiana Complaint does allege that Select Medical personnel improperly target and market towards ventilator patients who will be on ventilators in excess of 96 hours. (Doc. 13-3, at 8.)

weaning ventilator patients off before they were on it for 96 hours because it negatively affected her bonuses." (Doc. 1, at 26.)  Later, he alleges that "[i]n another instance, a respiratory therapist at Select Specialty - Knoxville weaned three patients off their ventilators before the patients reached the 96-hour mark and was heavily excoriated and reprimanded by three clinical liaisons for costing them money personally." (Doc. 1, at 27.)  Noticeably absent from the Complaint is any specific allegation identifying a particular patient who received kickback-tainted care and the presentment of a claim to the government regarding that care.  In the Sixth Circuit, alleging the details of a scheme is not enough; a representative sample is required. *Eberhard*, 2016 WL 731843, at *4.

Relator argues he should not be required to cite a specific claim; rather, he should be held to a relaxed pleading standard because "he cannot allege the specifics of actual false claims that in all likelihood exist, and the reason that the relator cannot produce such allegations is not attributable to the conduct of the relator." (Doc. 55-1, at 22 (quoting *Bledsoe*, 501 F.3d at 504).)

The problem with Relator's argument is two-fold.  First, the so-called relaxed pleading standard[8] discussed in *Bledsoe* does not apply to him.  The passage Relator quotes clarifies the

---

[8] The Sixth Circuit has never actually adopted the exception discussed in *Bledsoe*.

> We do not intend to foreclose the possibility of a court relaxing this rule in circumstances where a relator demonstrates that he cannot allege the specifics of actual false claims that in all likelihood exist, and the reason that the relator cannot produce such allegations is not attributable to the conduct of the relator. . . . Because this case does not present such circumstances, we express no opinion as to the contours or existence of any such exception to the general rule that an allegation of an actual false claim is a necessary element of a FCA violation.

*Bledsoe*, 501 F.3d at 504.  In February of this year, the Sixth Circuit again left open the possibility of a relaxed standard but again declined to decide the question. *Eberhard*, 2016 WL 731843, at *6.

kinds of situations in which such a standard may be appropriate. *Bledsoe* discussed *Hill v. Morehouse Medical Associates, Inc.*, No. 02–14429, 2003 WL 22019936 (11th Cir. Aug.15, 2003) (unpublished) (per curiam), in which the relator worked in the billing department of the hospital, described the alleged fraud in great detail, and possessed first-hand knowledge that false claims had been submitted to the government. Significantly, the relator also identified specific confidential documents that could substantiate her claims that were in the sole possession of the defendant. *Id*. at 4. Under those circumstances, the court excused the relator's inability to allege the particular dates associated with the false claim due to the strong evidence that such a false claim did exist. *Id*.

Relator attempts to bring himself within the exception by citing to *U.S. ex rel. White v. Gentiva Health Servs., Inc.*, a recent decision by Judge Reeves. No. 3:10-CV-394-PLR-CCS, 2014 WL 2893223 (E.D. Tenn. June 25, 2014). However, the comparison only clarifies that the allegations in Relator's complaint fall short. In *Gentiva*, part of the relator's job was reviewing claim information before it was locked and submitted to Medicare. *Id*. at 3. The relator pleaded specific facts based on personal knowledge of an audit that demonstrated a pattern of false billing to Medicare. *Id*. at 14. Based on these facts, Judge Reeves concluded that the relator was entitled to a "strong inference" that defendants submitted a false claim. *Id*. at 15.

In both *Hill* and *Gentiva*, the relators had reason to know of particular claim and billing information and could point to specific documents that supported their claims. Such facts are absent here. Relator is a respiratory therapist who alleges no personal knowledge of any claims or billing information and who cannot point to any documents in Defendants' possession that would confirm his claims.

This case is much more similar to a recent Sixth Circuit case which held that the relaxed standard did not apply, *U.S. ex rel. Eberhard v. Physicians Choice Lab. Servs.*, LLC, No. 15-5691, 2016 WL 731843 (6th Cir. Feb. 23, 2016). In *Eberhard*, the relator worked as a sales employee for a medical testing service and alleged that the medical testing service had violated the FCA and the Anti-Kickback statute based on bonuses it offered to its sales force for Medicare/Medicaid referrals. *Id*. at *1–2. The defendant filed a motion to dismiss, arguing that the complaint failed to identify a false claim and thus fell short of Rule 9(b)'s particularity standard. In an attempt to save his claim, the relator argued he was entitled to a relaxed pleading requirement. The relator claimed he had personal knowledge that the defendants had operated in violation of the Anti-Kickback statute by paying commissions to certain sales agents, "that his complaint provides, based upon his personal knowledge, the number of claims submitted by the 1099 sales force for two specific months" and that Medicare and Medicaid paid "in excess of 50% of the samples that 1099 agents submitted in those months." *Id*. at *5 (internal quotations omitted). He argued this was sufficient to establish the "strong inference" that claims were submitted in violation of the FCA. *Id*. The Sixth Circuit rejected this argument and—consistent with the cases discussed above—refused to extend the *Bledsoe* exception outside the limited context of a relator who has "personal knowledge of billing practices or contracts with the government." *Id*. (quoting *Chesbrough*, 655 F.3d at 472–72). Because the relator in *Eberhard* could only claim knowledge of the fraudulent scheme, and not billing practices or government contracts, he failed to fall within the exception. *Id*. at *6.

Like the relator in *Eberhard*, Relator here alleges only knowledge of the fraudulent scheme and cannot point to the time, place, or content of any misrepresentation to the government with respect to the alleged kickback scheme. Accordingly, Relator has failed to

comply with Rule 9(b) with regard to his kickback allegations, and his Complaint is due to be dismissed on that basis.

*   *   *

Plaintiff asserts four counts under the FCA, but all claims under the FCA must overcome the first-to-file bar and must comply with Rule 9(b). Because all of Relator's federal claims fail at least one of these requirements, Relator's federal claims will be dismissed.

### B.  State Law Claims

"[A] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006). According to 28 U.S.C. § 1367, the Court may decline to exercise supplemental jurisdiction over claims for which it does not have original jurisdiction if:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Continuing to exercise supplemental jurisdiction should only be done "in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh [] concern over needlessly deciding state law issues." *Id.* (internal quotation omitted). When "all federal law claims are eliminated before trial, the balance of factors to be considered under pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

The factors set forth in 28 U.S.C. § 1367 weigh against exercise of supplemental jurisdiction over Relator's remaining claims. Relator's claims are claims designed to protect the funds paid out under Tennessee's entitlement programs—a quintessential sovereign function. The Court sees no reason to insert itself into such matters of state concern. These state law issues clearly predominate over the federal claims given that all federal claims have been dismissed before discovery has even begun.

The Court finds that the interests of judicial economy and abstention from needlessly deciding state law issues weigh in favor of declining to exercise supplemental jurisdiction over Relator's remaining state law claims. Accordingly, the Court will **DISMISS** Relator's state law claims.

### C. Motion to Amend

To put Plaintiff's motion to amend in proper context, a brief recitation of the procedural history of this case is helpful. Relator originally filed his complaint in April 2014. (Doc. 1.) It was unsealed in July 2015 after the State of Tennessee and the United States declined to intervene. (Docs. 22, 23.) Defendants filed their motion to dismiss Relator's Complaint on November 18, 2015. (Doc. 28.) After a 30-day extension of time to respond to Defendant's motion, Plaintiff filed a response indicating that he would like to have been able to file an amended complaint in lieu of a response, but was prevented from doing so in light of evolving case law and the Christmas holidays. (Doc. 55.) Contemporaneous with his response, Relator moved for oral argument on the motion on January 11, 2016. (Doc. 56.) The Court granted this motion on February 26, 2016, and set argument for March 31, 2016. (Doc. 60.) On February 29, 2016, Relator filed a motion to continue the argument, citing scheduling conflicts (Doc. 61), which the Court granted on March 3, 2016, and reset the argument for April 14, 2016 (Doc. 62).

On April 11, 2016, almost five months since the motion to dismiss was filed, three months since he filed his response, and only three days before the scheduled argument, Relator filed a motion to amend his complaint. (Doc. 63.) As support, Relator asserts simply that his motion to amend will not prejudice Defendants since discovery has not begun. (*Id*.) In his response to the Court's order directing him to identify differences between the original complaint and the proposed complaint, counsel asserted that he had filed a FOIA request for Defendants' cost reports but had not received access to them until March 28, thus delaying his motion to amend. (Doc. 65.) Defendants oppose Plaintiff's motion arguing that the Amended Complaint is inexcusably delayed and futile. (Doc. 66.)

Rule 15 provides that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, denying leave is appropriate on grounds of undue delay and futility. *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 458 (6th Cir. 2013); *Foman v. Davis*, 371 U.S. 178, 182 (1962). In *Glazer*, the plaintiff moved to amend his complaint "four months after discovery of the 'new' evidence, well after Chase's motion to dismiss had been filed and fully briefed, and one month after the magistrate recommended granting it." 704 F.3d at 458. The district court denied the motion, reasoning that "allowing amendment under these circumstances would encourage delay and bad faith on the part of plaintiffs and prejudice defendants who would have wasted time and expense attacking a hypothetical complaint." *Id*. at 458–59. The Sixth Circuit affirmed the district court's judgment, noting that there was no excuse for the delay. *Id*. at 459.

The same result obtains here. The cost reports alleged to be the basis of the delay only account for two additional paragraphs in the proposed Amended Complaint. The vast majority of the additions are based on information to which Relator has presumably had access for years.

According to Wright and Miller, "a motion to amend should be made as soon as the necessity for altering the pleading becomes apparent. A party who delays in seeking an amendment is acting contrary to the spirit of the rule and runs the risk of the court denying permission because of the passage of time." § 1488 Amendments With Leave of Court—Timeliness of Motion to Amend, 6 Fed. Prac. & Proc. Civ. § 1488 (3d ed.). Relator initially acknowledged wishing to file an amended complaint in January, yet delayed three months—to the eve of the hearing on the motion to dismiss—to do so. Such undue delay prejudices both Defendants, who have wasted time and expense in attacking the Complaint, and the Court, which has spent time reviewing the briefing and preparing for oral argument, only to have the matter potentially rendered moot by the proposed amendments.

Relator's proposed Amended Complaint is also futile. His Amended Complaint alleges the same schemes that remain subject to the first-to-file bar, and it suffers from the same lack of particularity with regard to the kickback scheme as the original complaint. Accordingly, the Court will **DENY** the motion to amend.

### IV. CONCLUSION

For the reasons stated above, the Court will **DENY** Relator's motion to amend (Doc. 63) and **GRANT** Defendants' motions to dismiss and for judicial notice (Docs. 28, 30). Relator's state law claims will be **DISMISSED WITHOUT PREJUDICE**. Relator's federal claims will be **DISMISSED WITH PREJUDICE**. An accompanying order will enter.

>     /s/ *Travis R. McDonough*
>     **TRAVIS R. MCDONOUGH**
>     **UNITED STATES DISTRICT JUDGE**